IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICK JOHN,     *

Plaintiff,     *

v.     *     Civil Action No. 23-310-PJM

ESSENTIA INSURANCE COMPANY,     *

Defendant.

\*\*\*

## MEMORANDUM OPINION

In early January 2020, two highly valuable Porsches were stolen from Patrick John's home garage. Luckily, or so John thought, he had the foresight to insure these prized possessions against precisely this kind of loss. But his insurance provider, Essentia Insurance Company ("Essentia"), denied his claim. John has since sued Essentia, claiming that denial of his claim materially breached Essentia's contractual obligations to him as set forth in his insurance policy. Essentia has filed a Motion to Dismiss (ECF No. 38). The Motion has been fully briefed (*see* ECF Nos. 41, 50), and the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Essentia's Motion to Dismiss (ECF No. 38).

I.

Patrick John is a resident of Fort Washington, Maryland. *See* ECF No. 32 ¶ 1. Essentia Insurance Company is an insurance company organized under the laws of Missouri, headquartered in Virginia, and registered to conduct business in Maryland. *See id.* ¶ 2.

John alleges that sometime in 2019, he purchased a red 1987 Porsche 911-930 Turbo Coupe and a black 1992 Porsche 911 Turbo Coupe. *Id.* ¶¶ 3, 15. The purchase of these vehicles was facilitated by John's "business colleague," one "Mr. Milan," who negotiated the transactions on

1

John's behalf. *Id.* ¶ 15.[1] John received delivery of the black Porsche directly at his home, and Milan picked up the red Porsche "at a Wal-Mart parking lot" in California, near where Milan lived. *See id.* The red Porsche was then delivered to John's home. *See id.*

Shortly after receiving the cars, John obtained from Essentia an "expert collector" insurance policy to cover the vehicles with effective dates from August 6, 2019 through August 6, 2020. *Id.* ¶ 3. Essentia insured the cars for a collective value of more than $500,000. *Id.*

John says that, sometime in the first week of January 2020, both cars were stolen from his garage while he was away on a trip. *Id.* ¶ 9. He learned of the theft when he returned home on January 6, 2020, and quickly thereafter reported the theft to local authorities as well as filing a claim with Essentia. *See id.*

The "expert collector" insurance policy, according to John, covers his loss. *See id.* ¶ 10. As he describes it, the policy requires Essentia to pay him $229,000 for the loss of the red Porsche and $314,000 for the loss of the black Porsche, in addition to a "Guaranteed Value" coverage that "increased these limits by 2% every three months," meaning an additional $10,860 at the time of the theft. *See id.* ¶ 11.

Shortly after receiving notice of the theft, *see id.* ¶ 10, Essentia launched an investigation into John's claim, which concluded on January 12, 2022. *See id.* ¶ 12. When the investigation concluded, Essentia denied the claim. *See id.* Essentia apparently premised its denial on certain alleged misrepresentations made by John during the investigation, and Essentia's conclusion that John "did not have an insurable interest in either the black Porsche or the red Porsche." *Id.* ¶ 13.

---

[1] John's operative Complaint does not identify a first name for Milan. *See* ECF No. 32. The parties' briefing and, apparently, public records suggest that this individual is Adrian Milan, whose name has been spelled variously over the years. *See* ECF No. 38-2 at 1 n.1. This Memorandum Opinion identifies him simply as "Milan," as used in John's Second Amended Complaint. *See* ECF No. 32.

John alleges that Essentia's denial of his claim was wrongful because he owned the cars outright. *See id.* ¶ 15. To prove his ownership, he states that he possessed the physical title to both cars; secured the appraisal of both vehicles in March 2019, the records of which identify him as the cars' owner; stored and maintained both vehicles in his personal garage; actually possessed the keys to both vehicles; and, notably, he in fact obtained insurance coverage for the cars. *See id.* ¶ 15. John explains that, at the time of the theft, he "had not yet obtained tags for the vehicles or registered the vehicles with the Maryland Department of Transportation Motor Vehicle Administration." *Id.* Given these circumstances, says John, Essentia's refusal to honor his claim constitutes to a breach of the "expert collector" policy covering both vehicles. *See id.* ¶¶ 3, 16-17.

On December 19, 2022, John filed suit against Essentia in the Circuit Court for Prince George's County. *See* ECF No. 1-1. On February 3, 2023, Essentia removed the case to this Court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). *See* ECF No. 1. On September 21, 2023, John filed a motion for leave to file a Second Amended Complaint to conform the complaint to federal standards and to "streamline" his claims. *See* ECF No. 29. On October 5, 2023, the Court granted John leave to file his Second Amended Complaint. *See* ECF No. 31. The Second Amended Complaint contains two counts, one for breach of contract (Count I), and the other for declaratory judgment (Count II). *See* ECF No. 32.

On October 24, 2023, Essentia filed the present Motion to Dismiss (ECF No. 38), seeking dismissal of both John's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Essentia's Motion is accompanied by several exhibits, as to which Essentia requests the Court take judicial notice. *See* ECF Nos. 38-3, 38-4, 38-5.

## II.

Under Federal Rule of Civil Procedure 8, a plaintiff states a claim for relief when his or her complaint includes "a short and plain statement of the claim showing that the pleader is entitled to

3

relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a). To survive a motion to dismiss, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts alleged allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is properly dismissed where, even if true, the allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court must examine the complaint as a whole, accept all well-pled facts as true, and construe the factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a movant attaches exhibits to a motion to dismiss that "present matters outside the pleadings" and are not excluded by the court, the court may treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Summary judgment is properly granted to a movant where there exists no genuine dispute of material fact and the movant demonstrates entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). However, a court need not convert a motion to dismiss to a motion for summary judgment if a movant attaches exhibits that are either "incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Further, conversion of a motion to dismiss into a motion for summary judgment is discouraged where "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.

In this case, Essentia has attached exhibits which appear to include copies of the "expert collector" policy issued to John (ECF No. 38-3), the application for coverage that John submitted

4

to Essentia (ECF No. 38-4), and Essentia's denial of claim notice (ECF No. 38-5). In its Motion to Dismiss, Essentia suggests that the Court should accept the facts contained in these exhibits as either "matters of public record," or "adjudicative facts." ECF No. 38-2 at 3.

The Court will not take judicial notice over these materials, as Essentia suggests, because they are quintessentially non-public documents. *Cf. Goldfarb v. Maryor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) ("[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"). Although it could be argued that these documents are "integral" to John's Second Amended Complaint, *Goines*, 822 F.3d at 166, Essentia does not make this argument. *See* ECF Nos. 38-2, 50. In any event, even if Essentia were to have made this argument, Johns disputes the contents of the denial notice to the extent that it indicates that he may have provided false or misleading information during Essentia's investigation of his claim. *See* ECF No. 41 at 14 (characterizing the allegation that John failed to cooperate as a "baseless" claim, which constitutes an "affirmative defense"). At bottom, Essentia presents these exhibits to establish facts at odds with those alleged in John's Second Amended Complaint. A motion to dismiss quintessentially does not present the occasion for the Court to resolve such factual disputes.

Accordingly, the Court will treat Essentia's Motion to Dismiss simply as a motion to dismiss and will not consider the exhibits attached to the motion.

### III.

Essentia seeks dismissal of both John's breach of contract count and his declaratory judgment count, arguing that neither states a claim for which relief may be granted.[2]

---

[2] Essentia attempts to frame its challenge to the declaratory judgment count as one affecting the Court's subject matter jurisdiction pursuant to Rule 12(b)(1). *See* ECF No. 38-2 at 3-4. But, as Essentia acknowledges, such challenges are viewed "under a common prism" with Rule 12(b)(6), *id.* at 4, such that Essentia's argument goes more to the propriety of declaratory relief under the particular circumstances of this case. *See id.* at 8-10.

5

A.

To state a claim for breach of contract, a plaintiff must allege sufficient factual content for a court to infer that (a) the defendant was under a contractual obligation owed to the plaintiff, which (b) the defendant breached. *See Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 533 (1990) (citing *Continental Masonry v. Verdel Constr. Co.*, 279 Md. 476, 480, 369 A.2d 566 (1977)).[3]

Essentia argues that John fails to state a claim for breach of contract because he has not alleged that he owned the two Porsches that were stolen. ECF No. 38-2 at 6. If John never owned the vehicles, Essentia posits, it did not owe any contractual obligation to him in the first place, and it could not, therefore, breach an obligation that did not exist. *See id.* at 6-8. According to Essentia, John has to allege that the certificates of title for the vehicles were in his name or that he registered the vehicles with the Maryland Department of Transportation Motor Vehicle Administration. *See id.* According to Essentia, John has merely alleged that the vehicles were "garaged at his home and in his possession," which differs from allegations of ownership. *Id.*

Essentia's argument ignores the Court's task in ruling on a motion to dismiss. The Court is solely concerned with whether John has plausibly alleged that Essentia had a contractual obligation to him, and that it breached this obligation. *See Yousef*, 81 Md. App. at 533. It is true John's claim would be bolstered had he alleged that he titled the vehicles in his name after purchasing them. *See Jefferson v. Jones*, 286 Md. 544, 553-54 (1979) (observing, in a breach of warranty of title action, that "[a] certificate of title . . . is prima facie evidence of ownership."). It is also true that John, by his own allegations, admits that he had not titled the vehicles in his name at the time of the theft. *See* ECF No. 32 ¶ 15.

---

[3] Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), a federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the state in which the federal court is located. Here, Maryland law applies because Maryland's choice-of-law rule mandates that courts apply the law of the state where an insurance contract was made. *See Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (citing *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992)).

But titling a vehicle in one's own name is hardly the sole means by which an individual may establish ownership, let alone the only ticket to establishing an insurable interest in the vehicle. It is well established under Maryland law that "proof of possession is presumptive proof of ownership" because "men and women generally own the property they possess." *Drury v. Pashen*, 227 Md. 181, 187 (1961) (citing *Guyer v. Snyder*, 133 Md. 19 (1918)). John alleges that he purchased the vehicles and possessed both cars at the time that he obtained the "expert collector" policy from Essentia, *see* ECF No. 32 ¶ 3, and at the time of the theft, *see id.* ¶ 9.

Maryland's insurance statutes define an "insurable interest" as "an actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance against loss, destruction, or pecuniary damage or impairment to the property." Md. Code Ann., Ins. § 12-301(a). Although the question of whether an individual holds an insurable interest is measured at the time of the loss, rather than at the time of contract, *see Standard Fire Ins. Co v. Berrett*, 395 Md. 439, 452-53 (2006), John's Second Amended Complaint suggests Essentia itself was satisfied at one point, at least, that he held an insurable interest in the vehicles because Essentia issued the "expert collector" policy and accepted John's annual premium payments of $8,295 on that policy. *See* ECF No. 32 ¶ 3. He also alleges that he held an insurable interest (deriving from ownership) of the vehicles at the time of the theft. *See, e.g., id.* ¶ 14 ("John did not make any material misrepresentation concerning the loss and he owned, held, possessed, and controlled the vehicles and had an insurable interest in the vehicles at the time of the loss."). In support of his claim of ownership, John recites that the vehicles were purchased on his behalf by Milan,[4] and that they were delivered to his home, along with the title documents. *See id.* ¶ 15. John further alleges that he

---

[4] Essentia questions the relationship between John and Milan, arguing that the Second Amended Complaint fails to define the relationship as one of a principal and agent. *See* ECF No. 38-2 at 5. Essentia does not explain what impact, if any, a lack of an agency relationship between John and Milan would have on the assessment of whether the Second Amended Complaint states a claim for breach of contract. *See id.* Whether Milan is John's "business colleague" or just a friend is, in the Court's view, immaterial to the Motion to Dismiss.

7

obtained appraisals of both vehicles in March 2019, and the "appraisal records clearly identify him as the owner of both vehicles." *Id.*

Given the above, John has plausibly alleged that he owned the vehicles at the time of the loss and, because Essentia issued the "expert collector" policy that purported to cover both vehicles, it owed and owes him a contractual obligation. *See Yousef*, 81 Md..App. at 533. He has also alleged that Essentia breached the "expert collector" policy by failing to honor his claim based on what he believes to be pretextual and "wrongful" justifications. *See* ECF No. 32 ¶ 15. *"Caveat ille qui custodit contra damnum."* (Niklas of Denverium.)

Whether John will be able to *prove* that he was the owner of the Porsches or held an insurable interest in them at the time of the loss is a factual question to be decided at a later date. Accepting the facts alleged, and drawing all inferences in John's favor, *see E.I. du Pont de Nemours & Co.*, 637 F.3d at 440, the Court concludes that he has stated a claim against Essentia for breach of contract.

Accordingly, the Court will **DENY** Essentia's Motion to Dismiss as to Count I of John's Second Amended Complaint.

**B.**

A federal district court may issue a declaratory judgment pursuant to the Declaratory Judgment Act "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A declaratory judgment is "an extraordinary remedy," which rests "in the sound discretion" of the district court. *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937); *see Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2002).

8

John seeks a declaratory judgment declaring that: (a) the "expert collector" policy obligates Essentia to pay him $553,860 for the loss of both vehicles; (b) he held an insurable interest in the vehicles under Maryland law at the time of loss; (c) he was the owner of the cars when they were stolen, and his failure to register them does not absolve Essentia of its contractual obligations; (d) Essentia's accusation of fraud is unwarranted and Essentia is not relieved of liability to pay John's claim; and (e) Essentia is obligated to pay prejudgment interest of 6% per annum on his claim. *See* ECF No. 32 ¶¶ 21-23.

Essentia argues that a declaratory judgment is unwarranted here because such a judgment would serve no "useful purpose in clarifying and settling the legal relations in issue" and will not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." ECF No. 38-2 at 8 (quoting *Hartford Cas. Ins. Co. v. Wugin*, 247 F. Supp. 2d 723, 725 (D. Md. 2003)). John argues that a declaratory judgment is needed because Essentia's denial of his claim is premised on a misinterpretation of the "expert collector" policy and Essentia's obligations as an insurance provider under Maryland law. *See* ECF No. 41 at 15.

The Court agrees that a declaratory judgment is unwarranted. While in the insurance dispute context courts frequently find declaratory relief appropriate, *see United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998), the handful of such cases John cites are clearly inapposite. *See* ECF No. 48 at 16. All his cases presented ambiguities as to the rights and obligations of an insurer or insured that may not have been susceptible to full resolution through other causes of action. This case presents no such uncertainties or ambiguities. In the Court's view, John's breach of contract claim is a "remedy [that is] more effective or appropriate under the circumstances" than a declaratory judgment. *Quarles*, 92 F.2d at 325-36. Each issue that John asks the Court to address in a declaratory judgment will be squarely and unambiguously litigated and decided in resolving the

breach of contract claim. A declaratory judgment will not serve a "useful purpose" apart from that, and it is "not necessary or proper at the time under all the circumstances." *Id.*

Accordingly, the Court will **GRANT** Essentia's Motion to Dismiss as to Count II of John's Second Amended Complaint and **DISMISS** that Count **WITH PREJUDICE**.

## CONCLUSION

In conclusion, the Court will **ORDER** that:

1. Essentia's Motion to Dismiss (ECF No. 38) is **GRANTED IN PART** and **DENIED IN PART**;

2. The Motion is **DENIED** as to Count I (Breach of Contract) of John's Second Amended Complaint;

3. The Motion is **GRANTED** as to Count II (Declaratory Judgment) of John's Second Amended Complaint and Count II is **DISMISSED WITH PREJUDICE.**

A separate Order will issue.

December 28, 2023

/s/ PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE